OPINION OF THE COURT
Jones, J.
Where a local municipality conditions an amendment of its zoning ordinance on the execution of a declaration of covenants providing, in part, that no construction may occur on the property so rezoned without the consent of the municipality, absent a provision that such consent may not be unreasonably withheld the municipality may not be com- *597 polled to issue such consent or give an acceptable reason for failing to do so.
Appellants now own improved property in the Village of Flower Hill. In 1976, the then owners of the subject premises and appellants’ predecessors in-title, applied to the village board of trustees to rezone the property from a General Municipal and Public Purposes District to a Business District.[1] On October 4 of that year the village board granted the rezoning application by the following resolution:
“RESOLVED that the application of Ray R. Beck Company for a change of Zone of premises known and designated as Section 6, Block 73, Lots 9, 12 and 13 on the land and tax map of Nassau County from General Municipal and Public Purposes District be and the same hereby is granted upon the following conditions:
“(a) The Subject Premises and any buildings, structures and improvements situated or to be situated thereon, will be erected, altered, renovated, remodelled, used, occupied and maintained for the following purposes and no other;
“(i) Offices for the practice of the professions of medicine, dentistry, law, engineering, architecture or accountancy;
“(ii) Executive offices to be used solely for the management of business concerns and associations and excluding therefrom, but without limitation, retail or wholesale sales offices or agencies, brokerage offices of all types and kinds, collection or employment agencies or offices, computer programming centres or offices, counseling centres or offices and training offices or business or trade schools.
“(b) No more than four separate tenancies or occupan *598 cies are to be permitted on the subject premises or in any building, structure or improvement situated therein at any one time.
“(c) No building or structure or any portion thereof situated or to be situated on the Subject Premises is to be occupied by more than one person (excluding visitors, clients or guests of any tenant or occupant of such building or structure) for each 190 square feet of the gross floor area of such building or structure;
“(d) No building or structure situated on the Subject Premises on the date of this Declaration of Covenants will be altered, extended, rebuilt, renovated or enlarged without the prior consent of the Board of Trustees of the Village.
“(e) There will be maintained on the Subject Premises at all times, no less than twenty-six paved off-street, on-site parking spaces for automobiles and other vehicles, each such parking space to be at least 9’ x 20’ in dimensions and will be served by aisles and means of ingress and egress of sufficient width to permit the free movement and parking of automobiles and other vehicles.
“(f) Trees and shrubs installed on the Subject Premises pursuant to a landscape plan heretofore filed with the Village in or about 1964, will be maintained in compliance with said landscape plan.”
Subsequently, appellants’ predecessors in title entered into the contemplated declaration of covenants which was recorded in the office of the Clerk of Nassau County on November 29, 1976. Consistent with paragraph (d) of the board’s resolution, that declaration provided that “[n]o building or structure situated on the Subject Premises on the date of this Declaration of Covenants will be altered, extended, rebuilt, renovated or enlarged without the prior consent of the Board of Trustees of the Village.” Appellants, after acquiring title, made application in late 1978 to the village board for approval to enlarge and extend the existing structure on the premises. Without any reason being given that application was denied. Appellants then commenced this action to have the board’s determination declared arbitrary, capricious, unreasonable, and unconstitutional and sought by way of ultimate relief *599 an order directing the board to issue the necessary building permits.
Asserting that the board’s denial of the application was beyond review as to reasonableness, respondent moved to dismiss the complaint for failure to state a cause of action. Special Term denied the motion, equating appellants’ allegation that the board’s action was arbitrary and capricious with an allegation that such action was lacking in good faith and fair dealing — an allegation which it found raised triable issues of fact. The Appellate Division reversed and dismissed the complaint, holding that the allegation of arbitrary and capricious action by the board was not the equivalent of an allegation that the board breached an implied covenant of fair dealing and good faith. We now affirm.
At the outset this case involves the question of the permissibility of municipal rezoning conditioned on the execution of a private declaration of covenants restricting the use to which the parcel sought to be rezoned may be put. Prior to our decision in Church v Town of Islip (8 NY2d 254), in which we upheld rezoning of property subject to reasonable conditions, conditional rezoning had been almost uniformly condemned by courts of all jurisdictions — a position to which a majority of States appear to continue to adhere. Since Church, however, the practice of conditional zoning has become increasingly widespread in this State,[2] as well as having gained popularity in other jurisdictions (see, e.g., Scrutton v County of Sacramento, 275 Cal App 2d 412; Goffinet v County of Christian, 30 Ill App 3d 1089; City of Greenbelt v Bresler, 248 Md 210; Sylvania Elec. Prods. v City of Newtown, 344 Mass 428; Gladwyne Colony v Lower Merion Twp., 409 Pa 441).
Because much criticism has been mounted against the practice, both by commentators and the courts of some of our sister States,[3] further exposition is in order._
*600 Probably the principal objection to conditional rezoning is that it constitutes illegal spot zoning, thus violating the legislative mandate requiring that there be a comprehensive plan for, and that all conditions be uniform within, a given zoning district. When courts have considered the issue (see, e.g., Baylis v City of Baltimore, 219 Md 164; Houston Petroleum Co. v Automotive Prods. Credit Assn., 9 NJ 122; Hausmann & Johnson v Berea Bd. of Appeals, 40 Ohio App 2d 432), the assumptions have been made that conditional zoning benefits particular landowners rather than the community as a whole and that it undermines the foundation upon which comprehensive zoning depends by destroying uniformity within use districts. Such unexamined assumptions are questionable. First, it is a downward change to a less restrictive zoning classification that benefits the property rezoned and not the opposite imposition of greater restrictions on land use. Indeed, imposing limiting conditions, while benefiting surrounding properties, normally adversely affects the premises on which the conditions are imposed. Second, zoning is not invalid per se merely because only a single parcel is involved or benefited (Matter of Mahoney v O’Shea Funeral Homes, 45 NY2d 719); the real test for spot zoning is whether the change is other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community (Rodgers v Village of Tarrytown, 302 NY 115). Such a determination, in turn, depends on the reasonableness of the rezoning in relation to neighboring uses — an inquiry required regardless of whether the change in zone is conditional in form. Third, if it is initially proper to change a zoning classification without the imposition of *601 restrictive conditions notwithstanding that such change may depart from uniformity, then no reason exists why accomplishing that change subject to condition should automatically be classified as impermissible spot zoning.
Both conditional and unconditional rezoning involve essentially the same legislative act — an amendment of the zoning ordinance. The standards for judging the validity of conditional rezoning are no different from the standards used to judge whether unconditional rezoning is illegal. If modification to a less restrictive zoning classification is warranted, then a fortiori conditions imposed by a local legislature to minimize conflicts among districts should not in and of themselves violate any prohibition against spot zoning.
Another fault commonly voiced in disapproval of conditional zoning is that it constitutes an illegal bargaining away of a local government’s police power (see, e.g., Hartnett v Austin, 93 So 2d 86 [Fla], supra; Baylis v City of Baltimore, 219 Bd 164, supra; Ziemer v County of Peoria, 33 Ill App 3d 612, supra). Because no municipal government has the power to make contracts that control or limit it in the exercise of its legislative powers and duties, restrictive agreements made by a municipality in conjunction with a rezoning are sometimes said to violate public policy. While permitting citizens to be governed by the best bargain they can strike with a local legislature would not be consonant with notions of good government, absent proof of a contract purporting to bind the local legislature in advance to exercise its zoning authority in a bargained-for manner, a rule which would have the effect of forbidding a municipality from trying to protect landowners in the vicinity of a zoning change by imposing protective conditions based on the assertion that that body is bargaining away its discretion, would not be in the best interests of the public. The imposition of conditions on property sought to be rezoned may not be classified as a prospective commitment on the part of the municipality to zone as requested if the conditions are met; nor would the municipality necessarily be precluded on this account from later reversing or altering its decision (cf. Matter of Grimpel Assoc. v Cohalan, 41 NY2d 431).
*602 Yet another criticism leveled at conditional zoning is that the State enabling legislation does not confer on local authorities authorization to enact conditional zoning amendments (see, e.g., Houston Petroleum Co. v Automotive Prods. Credit Assn, 9 NY 122, supra; Baylis v City of Baltimore, 219 Md 164, supra). On this view any such ordinance would be ultra vires. While it is accurate to say there exists no explicit authorization that a legislative body may attach conditions to zoning amendments (see, e.g., Village Law, § 7-700 et seq.), neither is there any language which expressly forbids a local legislature to do so. Statutory silence is not necessarily a denial of the authority to engage in such a practice. Where in the face of nonaddress in the enabling legislation there exists independent justification for the practice as an appropriate exercise of municipal power, that power will be implied. Conditional rezoning is a means of achieving some degree of flexibility in land-use control by minimizing the potentially deleterious effect of a zoning change on neighboring properties; reasonably conceived conditions harmonize the landowner’s need for rezoning with the public interest and certainly fall within the spirit of the enabling legislation (see Church v Town of Islip, 8 NY2d 254, supra).
One final concern of those reluctant to uphold the practice is that resort to conditional rezoning carries with it no inherent restrictions apart from the restrictive agreement itself. This fear, however, is justifiable only if conditional rezoning is considered a contractual relationship between municipality and private party, outside the scope of the zoning power — a view to which we do not subscribe. When conditions are incorporated in an amending ordinance, the result is as much a “zoning regulation” as an ordinance adopted without conditions. Just as the scope of all zoning regulation is limited by the police power, and thus local legislative bodies must act reasonably and in the best interests of public safety, welfare and convenience (Village of Euclid v Amber Realty Co., 272 US 365, 387; Matter of New York Inst. of Technology v Le Boutillier, 33 NY2d 125, 130; Matter of Concordia Coll. Inst. v Miller, 301 NY 189,196), the scope of permissible conditions must of necessity be similarly limited. If, upon proper proof, the *603 conditions imposed are found unreasonable, the rezoning amendment as well as the required conditions would have to be nullified, with the affected property reverting to the preamendment zoning classification.
Against this backdrop we proceed to consideration of the contentions advanced by appellants in the appeal now before us. It is first useful to delineate arguments which they do not advance. Thus, they do not challenge the conditional zoning change made in 1976 at the behest of their predecessors in title; no contention is made that the village board was not authorized to adopt the resolution of October 4,1976, conditioned as it was on the execution and recording of the declaration of covenants, or that the provisions of that declaration were in 1976 arbitrary, capricious, unreasonable or unconstitutional.[4] The reason may be what is apparent, namely, that any successful challenge to the adoption of the 1976 resolution would cause appellants’ premises to revert to their pre-1976 zoning classification— a consequence clearly unwanted by them.
The focus of appellants’ assault is the provision of the declaration of covenants that no structure may be extended or enlarged “without the prior consent of the Board of Trustees of the Village”. Appellants would have us import the added substantive prescription — “which consent may not be unreasonably withheld”. Their argument proceeds along two paths: first, that as a matter of construction the added prescription should be read into the provision; second, that because of limitations associated with the exercise of municipal zoning power the village board would have been required to include such a prescription.
Appellants’ construction argument must fail. The terminology employed in the declaration is explicit. The concept that appellants would invoke is not obscure and language to give it effect was readily available had it been the intention of the parties to include this added stipulation.
*604 Appellants point to no canon of construction in the law of real property or of contracts which would call for judicial insertion of the missing clause. Where language has been chosen containing no inherent ambiguity or uncertainty, courts are properly hesitant, under the guise of judicial construction, to imply additional requirements to relieve a party from asserted disadvantage flowing from the terms actually used (cf. Dress Shirt Sales v Martinque Assoc., 12 NY2d 339).
The second path either leads nowhere or else goes too far. If it is appellants’ assertion that the village board was legally required to insist on inclusion of the desired prescription, there is no authority in the court to reform the zoning enactment of 1976 retroactively to impose the omitted clause. Whether the village board at that time would have enacted a different resolution in the form now desired by appellants is open only to speculation; the certainty is that they did not then take such legislative action. On the other hand, acceptance of appellants’ proposition would produce as the other possible consequence the conclusion that the 1976 enactment was illegal, throwing appellants unhappily back to the pre-1976 zoning of their premises, a destination which they assuredly wish to sidestep.
Finally, we agree with the Appellate Division that the allegation of the complaint that the village board in denying appellants’ application acted in an arbitrary and capricious manner is not an allegation that the board acted in bad faith or its equivalent.
For the reasons stated the Board of Trustees of the Incorporated Village of Flower Hill may not now be compelled to issue its consent to the proposed enlargement and extension of the existing structure on the premises or in the alternative give an acceptable reason for failing to do so. Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.

. Prior to 1964 the subject premises, then vacant, had been zoned for single-family dwellings with a minimum lot size of 7,500 square feet. In that year the then owners applied to the village board to rezone a portion of the property and place it in the General Municipal and Public Purposes District so that a private sanitarium might be constructed. Concurrently with that application a declaration of covenants restricting the use of the property to a sanitarium was recorded in the county clerk’s office. The village board then granted the rezoning application, but limited the property’s use to the purposes set forth in the declaration of covenants. The 1976 rezoning application, which as conditionally granted is the subject of this suit, was made because the private sanitarium had fallen into disuse and it was asserted that without rezoning the property could neither be sold nor leased.

. Instances of the application of the principle have been before this court in Matter of Dexter v Town Bd. of Town of Gates (36 NY2d 102), Albright v Town of Manlius (28 NY2d 108), and Point Lookout Civic Assn. v Town of Hempstead (9 NY2d 961).

. (See, e.g., Babcock, The Zoning Game, chs 1, 3; Basset, Zoning, ch. 9; Crolly, The Rezoning of Properties Conditioned on Agreements with Property *600 Owners — Zoning by Contract, NYLJ, March 9, 1961, p 4, col 1; Scott, Toward a Strategy for Utilization of Contract and Conditional Zoning, 51 J Urban L 94; Trager, Contract Zoning, 23 Md L Rev 121; Note, Three Aspects of Zoning; Unincorporated Areas — Exclusionary Zoning — Conditional Zoning, 6 Real Prop, Prob & Tr J 178; Comment, The Use and Abuse of Contract Zoning, 12 UCLA L Rev 897. For judicial criticism, see e.g., Allred v City of Raleigh, 178 SE2d 432; Baylis v City of Baltimore, 219 Md 164; City of Farmers Branch v Hawnco, Inc., 435 SW2d 288 [Tex] ; Ford Leasing Dev. Co. v Board of County Comrs., 186 Col 418; Hartnett v Austin, 93 So 2d 86 [Fla] ; Haymon v City of Chattanooga, 513 SW2d 185 [Tenn] ; Houston Petroleum Co. v Automotive Prods. Credit Assn., 9 NJ 122; Sandenburgh v Michigamme Oil Co., 249 Mich 372; Ziemer v County of Peoria, 33 Ill App 3d 612.)

. Inasmuch as no contention is made that the adoption of the 1976 resolution by the village board constituted impermissible spot zoning or that the action of the board at that time was otherwise unreasonable or constituted an impermissible exercise of its zoning powers, we do not reach or consider such issues.