**LONG ISLAND LIGHTING COMPANY, Plaintiff,**

v.

**IMO DELAVAL, INC., and Stone & Webster Engineering Corporation, Defendants.**

**No. 85 Civ. 6892 (GLG).**

United States District Court, S.D. New York.

Aug. 20, 1987.

---

Hunton & Williams, Richmond, Va. (Robert M. Rolfe, Douglas W. Davis, New York City, of counsel), for plaintiff.

Weil, Gotshal & Manges, New York City (James W. Quinn, Mindy J. Spector, of counsel), and Rosenman & Colin, New York City (Robert E. Smith, of counsel), for defendant Imo Delaval, Inc.

Mudge Rose Guthrie Alexander & Ferdon, New York City (Laurence V. Senn, Jr., Judith Lockhart, of counsel), for defendant Stone & Webster Engineering Corp.

## OPINION

GOETTEL, District Judge.

### INTRODUCTION

The history of this action is set forth in detail in this Court's prior decision, *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442 (S.D.N.Y. 1986) (*"LILCO I"*), familiarity with which is assumed. Defendant Transamerica De-

laval, Inc. recently changed its name to Imo Delaval, Inc., and shall be refered to herein as "Delaval."

In *LILCO I*, we dismissed ten of the eleven counts of the original complaint. We subsequently denied the plaintiff's motion to reargue that decision. *Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 648 F.Supp. 988 (S.D.N.Y.1986) (*"LILCO II"*). The plaintiff thereafter filed an amended complaint asserting six counts against Delaval as follows: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) post-crankshaft failure fraud; (3) breach of future warranty of repair; (4) breach of services contract; (5) indemnity; and (6) contribution. Delaval now moves to dismiss counts one, two, four, five, and six of the amended complaint in their entirety, and portions of count three.

The amended pleading also names Stone & Webster Engineering Corp. ("Stone & Webster") as a defendant, and asserts claims against it for breach of contract and negligent performances of services in connection with the Shoreham Nuclear Power Station ("Shoreham"). Stone & Webster moves to dismiss the two counts against it (counts seven and eight) for failure to state a claim upon which relief can be granted.

Plaintiff Long Island Light Company ("LILCO") opposes both motions and moves to file a second amended complaint, adding claims for indemnity and contribution, and expanding its plea for damages against Stone & Webster.

## DISCUSSION

I. *Delaval's Motion to Dismiss Counts One, Two, Four, Five, and Six, and Part of Count Three*

A. *Count One—RICO*

■ Delaval moves to dismiss count one of the amended complaint as barred by our prior ruling dismissing the plaintiff's original RICO claim as untimely. *LILCO I*, 646 F.Supp. at 1453–54. LILCO contends that additional allegations in the amended complaint state a timely RICO claim.

As noted in *LILCO I*, under federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis for the action. *Id.* at 1454. *See Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.), *cert. denied sub nom. Nassau County Republican Committee v. Cullen*, — U.S. —, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). LILCO previously alleged that it only discovered its injury in 1983, when the diesels failed. However, we ruled that LILCO knew or should have known of its injury in mid–1977, making its RICO claim untimely when filed in August 1985. *LILCO I*, 646 F.Supp. at 1454. This result is unchanged by the Supreme Court's recent ruling applying a four-year statute of limitations to RICO claims. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, — U.S. —, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

LILCO now argues that a RICO claim accrues at the time of the last predicate act on which a plaintiff relies. The amended complaint alleges that, in 1983, Delaval actively concealed and misled LILCO about the cause of the diesel crankshaft failures, at which point LILCO was injured by having to expend additional time and money to analyze and correct the problem. The defendant, however, submitted papers just prior to argument of the instant motion that put LILCO in a rather awkward position regarding this argument.

In an action brought against LILCO by Suffolk County, and others, in the Eastern District of New York, LILCO, represented by different counsel, moved to dismiss by arguing as follows:

RICO Act claims are not saved merely because the plaintiffs have attempted to allege racketeering acts that purportedly continued to occur within four years of commencement of this lawsuit. The courts have rejected attempts to salvage untimely claims by RICO plaintiffs who argue that the statute of limitations does not begin to run until commission of the "last predicate act" upon which a RICO claim is based. *Bowling v. Founders Title Co., supra*, 773 F.2d [1175] at 1178 [ (11th Cir.1985) ]; *Compton v. Ide, supra*, 732 F.2d [1429] at 1432–33 [ (9th Cir.1984) ]; *Cantor v. Life Alert, Inc.*,

supra, 655 F.Supp. [673] at 677 [ (S.D.N. Y.1987) ]; see also Long Island Lighting Co. v. Transamerica Delaval, Inc., supra, 646 F.Supp. 1442.

Memorandum of Law in Support of Motion For Dismissal and For Summary Judgment at 66–67, County of Suffolk, et al. v. LILCO, et al., No. 87 Civ. 646 (LDW). LILCO's counsel here denies any knowledge of that memorandum prior to receiving it from these defendants. We accept that representation. However, since we agree with the substance of the above-quoted paragraph, we reject LILCO's attempt to salvage an untimely RICO claim by arguing that the limitations period does not begin until commission of the last predicate act upon which the claim is founded. Consequently, we grant Delaval's motion to dismiss count one of the amended complaint.

### B. Count Two—Post-Crankshaft Failure Fraud

■ Delaval moves to dismiss count two of the amended complaint for failure to state a timely or adequate claim for fraud. LILCO contends that its fraud claim has been repleaded to cure the defects in the original complaint. It is hard to cure untimeliness, which was the primary basis for dismissing this claim. LILCO I, 646 F.Supp. at 1452.

We ruled that LILCO knew or should have known of the diesel defects and Delaval's alleged fraud in mid–1977. The amended complaint adds nothing to change that ruling. LILCO alleges continuing concealment and misrepresentations by Delaval in 1983. But, Delaval could not conceal what LILCO should have long since known about and remedied. Thus, any claim of subsequent concealment lacks the necessary element of justifiable reliance. Id.

■ LILCO also fails to state a cause of action for fraud because New York does not recognize an independent claim for fraud when the only allegations of fraud relate to a breach of contract. Id. at 1449.

Consequently, Delaval's motion to dismiss count two of the amended complaint is granted.

### C. Count Three—Punitive Damages on Breach of Contract/Warranty

■ Count three of the amended complaint restates the one claim not dismissed in LILCO I, breach of future warranty to repair and replace. However, the plaintiff has appended to that count a claim for punitive damages. LILCO contends that punitive damages may be sought if the alleged breach of contract or warranty was sufficiently egregious to state morally culpable conduct on the part of Delaval. LILCO stresses that Delaval concealed defects in the diesels, falsified and suppressed records, lied, and concealed vital information. This intentionally dishonest conduct, says LILCO, justifies punitive damages.

New York law does not allow recovery for punitive damages in breach of contract cases when the case involves only a private wrong and not a public right. Brink's Inc. v. City of New York, 717 F.2d 700, 704 (2d Cir.1983) (citing Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 353 N.E.2d 793, 795, 386 N.Y.S.2d 831, 833 (1976)). "This is true even if the breach results from a deliberate breach of good faith." Id. (citing Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., 33 A.D.2d 766, 306 N.Y.S.2d 599, 601 (1st Dep't 1969), aff'd, 30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329, cert. denied, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972)). See Jacobson v. New York Property Insurance Underwriting Association, 120 A.D.2d 433, 501 N.Y.S.2d 882, 884 (1st Dep't 1986).

LILCO seems to be relying on an argument we previously rejected, i.e., that the defective diesels created a public safety hazard because of their intended use in a nuclear power plant. See LILCO I, 646 F.Supp. at 1457. Here, LILCO contends that Delaval's marketing of a product it allegedly knew was inherently dangerous constitutes "morally culpable" conduct. Regardless of how LILCO attempts to dress up its claim, the injury alleged in this suit is economic. See LILCO I, 646 F.Supp. at 1457. LILCO seeks to recover

the costs it incurred as a result of repair and replacement of the Delaval diesels, and its increased expenses in constructing Shoreham. The Public Service Commission ("PSC") found a substantial portion of these costs to be attributable to LILCO's imprudent management of the Shoreham construction, and refused to allow LILCO to unload the costs onto its ratepayers. The fact that LILCO is responsible to its ratepayers does not convert Delaval's alleged breach, a private wrong, into morally culpable conduct aimed at injuring the public generally. *See Purdy v. Consumers Distributing Co.*, 648 F.Supp. 980, 983 (S.D.N.Y.1986) (citing *Halpin v. Prudential Insurance Co.*, 48 N.Y.2d 906, 401 N.E.2d 171, 425 N.Y.S.2d 48, 49 (1979)). Consequently, we grant Delaval's motion to dismiss plaintiff's claim for punitive damages in count three.

### D. *Count Four—Breach of Services Contract*

■ Count four of the amended complaint asserts a claim for breach of contract based upon Delaval's alleged failure to provide promised services. This new claim seems to restate count two of the original complaint, which alleged negligent failure to perform services under a contract. We noted in *LILCO I* that a claim of negligent failure to perform contractual services *may* more properly state a claim for breach of contract than one for negligence. 646 F.Supp. at 1457. LILCO appears to have read that statement as an invitation to re-plead the claim in contract rather than in tort. It was not so intended. We dismissed LILCO's breach of contract claims as time-barred under the Uniform Commercial Code's four-year limitations period, which runs from the date of delivery of goods sold. *Id.* at 1454–55. The plaintiff's renewed claim of breach of contract for services is not saved by its rewording.

Contracts that primarily provide for the sale of goods, even if they include provision of services, are governed by the U.C.C.'s statute of limitations. *See Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir.1979), *aff'd after remand*, 651 F.2d 132 (2d Cir.1981). A contractual provision for services during installation and testing of expensive and highly technical equipment does not transform a contract predominantly for the sale of the goods into one for provision of services. *See J.I. Hass Co. v. Frank A. Kristal Associates*, 127 A.D.2d 541, 512 N.Y.S.2d 104, 105 (1st Dep't 1987).

Accordingly, we grant Delaval's motion to dismiss count four of the amended complaint.

### E. *Count Five—Indemnity*

In *LILCO II*, we rejected the plaintiff's claim for indemnification under a contractual provision. 648 F.Supp. at 989–90. The amended complaint asserts a claim for common law indemnity. LILCO contends that it delegated to Delaval the duty to comply with applicable laws and regulations regarding the diesel generators to be used at Shoreham, and that additional costs and delays were incurred because the Delaval diesels proved to be defective. The PSC barred LILCO from recovering a substantial portion of these increased costs from its ratepayers. LILCO argues that the true wrongdoer was Delaval, and that, in holding LILCO vicariously liable for the diesel problems, the PSC left open LILCO's right to seek indemnification from Delaval.

■ LILCO's argument is but another attempt to circumvent our prior ruling. Pursuant to regulations established by the Nuclear Regulatory Commission, LILCO had a nondelegable duty to see that the diesels met the necessary specifications. More important, even if Delaval had a duty to provide equipment in compliance with federal and state law and regulations, only LILCO had a duty to incur costs prudently. As noted in *LILCO II*, 648 F.Supp. at 990, the PSC imposed "penalties" on LILCO not merely because the diesels were defective or malfunctioned, but because LILCO was negligent in supervising and managing the construction of Shoreham and, thus, imprudently incurred exhorbitant additional costs. *Id.* LILCO may not seek indemnification from Delaval for its own imprudence.

242

Accordingly, we grant Delaval's motion to dismiss count five of the amended complaint. Having so ruled, we need not address Delaval's alternative argument that LILCO's indemnity claim is premature.

### F. *Count Six—Contribution*

 Count six of the amended pleading seeks contribution for the same items as to which the plaintiff seeks indemnification. No specific claim for contribution was asserted in the original complaint.

New York law provides that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them." N.Y.Civ. Prac.L. & R. § 1401 (McKinney 1976). Delaval argues that the plaintiff fails to meet the requirements of this statute as it has been interpreted by the courts.

Contribution is available when the party from whom it is sought owes a duty to an injured third party. *See Rosner v. Paley*, 65 N.Y.2d 736, 481 N.E.2d 553, 555, 492 N.Y.S.2d 13, 15 (1985). Here, although LILCO would like us to view this case in terms of grave potential injury to the public, the only party actually injured is the plaintiff. That injury is financial, primarily the costs that the PSC barred LILCO from passing along to its ratepayers. The ratepayers were not injured. If anything, they were spared substantial expense because the PSC refused to let LILCO defray its costs by increasing utility rates. Delaval has no independent duty to LILCO's ratepayers, and is simply not a joint tortfeasor within the purview of the contribution statute. *See Board of Education of Hudson City School District v. Sargent, Webster, Crenshaw & Folley*, 125 A.D.2d 27, 511 N.Y.S.2d 961, 963–64 (3d Dep't), *leave to appeal granted*, App.Div., 513 N.Y.S.2d 651 (1987).

Under these circumstances, Delaval's motion to dismiss count six of the amended complaint is granted.

### II. *Stone & Webster's Motion to Dismiss Counts Seven and Eight of the Amended Complaint*

LILCO employed Stone & Webster to provide design, engineering, and construction management services in connection with Shoreham. LILCO alleges that, between 1974 and 1976, Stone & Webster received inaccurate information from Delaval regarding the diesel generators it was supplying for Shoreham, but that Stone & Webster failed properly to evaluate that information. LILCO also alleges that, between 1975 and 1978, Stone & Webster received information about diesel generators at other nuclear plants that should have alerted Stone & Webster to potential problems with the Delaval diesels at Shoreham. LILCO claims that Stone & Webster failed to advise it of any of the information or problems regarding the diesels. Consequently, LILCO seeks damages from Stone & Webster for all injuries it claims to have suffered because of the diesel problems. These include the price of the diesels, the cost of investigating the diesel problems, the cost of repair and testing, increased licensing costs, the cost of replacing the defective diesels with alternate power generators, and the cost of future testing and monitoring to insure reliable operation of the diesels.[1]

Count seven of the amended complaint asserts that Stone & Webster breached its contract with LILCO (the "Agreement") by failing to provide various professional services "consistent with the best engineering and architectural practices." Amended Complaint, Exhibit B at 3. Count eight asserts a tort claim for negligent supervision of the Shoreham project. LILCO characterizes its allegations against Stone & Webster as claims in the nature of malprac-

---

**1.** LILCO's proposed second amended complaint seeks to add two additional damage claims against Stone & Webster, namely (1) the increased costs of construction of Shoreham allegedly caused by the diesel problems, and (2) the costs of defending an action before the PSC and the "penalties" assessed against LILCO by the PSC as a result of the diesel problems. With these additions, the relief sought against Stone & Webster duplicates that sought from Delaval. *See* Amended Complaint ¶ 28.

tice and breach of warranty. Memorandum of Law in Opposition to Stone & Webster's Motion to Dismiss at 8.

Stone & Webster argues that LILCO contractually agreed to bear the losses it now seeks to impose on Stone & Webster. Stone & Webster relies on several "Insurance and Indemnity" clauses in the contract, specifically, VII.E.1. and VII.E.3., which state, in pertinent part, as follows:

VII.E.1. Stone & Webster's liability irrespective of fault or negligence for loss or damage to LILCO's property including the plant, or to any third party for personal injury or death and property damage, occurring during construction or thereafter and arising out of Stone & Webster's performance of its services under the Agreement shall be limited at contract or at law to the proceeds from the insurance placed by Stone & Webster and LILCO pursuant to paragraphs A and B, C and D, above. If LILCO so elects in writing, Stone & Webster will afford LILCO increased insurance liability limits from those specified in paragraph B, above, of this Article, ...

\* \* \* \* \* \*

VII.E.3. Neither Stone & Webster nor vendors, contractors or subcontractors shall be liable to LILCO, either individually or jointly and irrespective of whether caused by negligence, for loss of anticipated profits, interest, loss by reason of shutdown or nonoperation of the Project or other facilities, increased expenses of operation of the Project or other facilities, or special or consequential loss or damage, arising from any cause whatsoever....

Amended Complaint, Exhibit B at 13–14. Stone & Webster contends that, pursuant to these provisions, LILCO assumed the risk of loss for the types of damages it seeks to recover here from Stone & Webster, whether direct, special, or consequential. Stone & Webster stresses that courts will uphold limitations of liability, including those involving negligence, when such contractual provisions are negotiated between sophisticated commercial parties. *See Kal-*

*isch–Jarcho, Inc. v. New York,* 58 N.Y.2d 377, 448 N.E.2d 413, 416, 461 N.Y.S.2d 746, 749 (1983).

■ LILCO responds that the limiting clauses quoted above refer only to the specific insurance coverage identified in the contract, which does not include coverage for malpractice or breach of warranty, so that Stone & Webster's liability should not be limited. Moreover, LILCO argues that the limitation of liability for personal or property damage is inapplicable because the damages at issue here are economic. LILCO also asserts that section 5–323 of New York General Obligations Law prohibits a contractor from exempting himself from liability for injury to person or property caused by the contractor's negligence. Accordingly, says LILCO, any such provision in the Agreement would be void as against public policy, and Stone & Webster may be held liable for its negligence. These arguments not only contradict each other, they even lack merit individually.

Clause VII.E.1 says that Stone & Webster's liability *"shall be limited"* to proceeds from insurance. LILCO opines that Stone & Webster's liability is limited as to *only* those items specified in the paragraphs describing the insurance coverage and that malpractice is not included therein. We see no reason to read additional language into the express terms of the parties' Agreement. *See Collard v. Incorporated Village of Flower Hill,* 52 N.Y.2d 594, 421 N.E.2d 818, 823, 439 N.Y.S.2d 326, 331 (1981). Moreover, LILCO is simply wrong in asserting that malpractice is not mentioned among the insured risks. Clause VII.A.2 of the Agreement specifies that LILCO shall maintain $1,000,000 of comprehensive general liability insurance applicable to Stone & Webster's operations in connection with Shoreham, with the policy to include, *inter alia,* "Contractual Liability" and "Incidental Malpractice" coverage. Amended Complaint, Exhibit B at 9. Clause VII.B.1 requires Stone & Webster to maintain excess comprehensive general liability coverage in the amount of $9,000,-000 for the same risks. *Id.* at 10. In addition, the limitation of liability clause

allows LILCO to elect to increase the excess insurance coverage that Stone & Webster must carry. *Id.* at 13.

Even if we were to assume that "incidental malpractice" does not cover the plaintiff's claims against Stone & Webster herein, it stretches the credulity·of this Court to suggest that malpractice was not within the risks that the parties contemplated and allocated in negotiating the Agreement. Both parties are sophisticated corporate entities, knowledgeable and experienced in the field of nuclear construction, and in the arena of contract negotiations. The plain language of the limitations clause suggests that the parties intended to include malpractice among the risks for which recovery was limited. Clause VII.E.1 limits Stone & Webster's liability "irrespective of fault or negligence" for damage to persons or property "arising out of Stone & Webster's performance of its services under the Agreement." Stone & Webster's services included design, engineering, and other professional services "consistent with the best engineering and architectural practices." As we read this clause, if Stone & Webster's failure to render professional services as specified caused injury to persons or property, LILCO's remedy is found in an insurance claim under whatever insurance the parties placed, whether the injury is caused by negligence, breach or contract, or malpractice.[2]

LILCO argues, however, that the damages it seeks are economic, so that the limitation of liability for injury to persons or property is inapplicable. Ignoring for the moment LILCO's apparent shift in position as to how its damage claims should be characterized, we agree that the essence of

the plaintiff's claims are for economic injury. *See LILCO I,* 646 F.Supp. at 1457. We also agree that economic injury is not within the scope of clause VII.E.1. However, clause VII.E.3 specifically *exempts* Stone & Webster from liability for a variety of economic losses in connection with Shoreham's operation or nonoperation. This exemption is for financial loss from any cause whatsoever, and encompasses all economic damages alleged in the amended complaint. Thus, LILCO cannot seek economic damages from Stone & Webster here.

In one last effort to hold Stone & Webster responsible for some or all of its financial losses, LILCO argues that the exemption provisions of clause VII.E.3 are void and unenforceable under N.Y.Gen. Oblig.Law § 5–323. Section 5–323 proscribes exempting contractors from liability for injuries to persons or property. As noted above, the Agreement merely *limits* Stone & Webster's liability in this regard. It *exempts* Stone & Webster from liability only for economic losses. Exemptions from liability for economic losses are not rendered void or unenforceable under section 5–323. Thus, this final argument by LILCO is also unavailing.

Under the plain language of the Agreement, we find Stone & Webster is exempt from liability for the economic damages sought here by LILCO. LILCO's remedy for any claims for property damage, *i.e.,* damage to the diesels themselves, whether caused by negligence, malpractice, or otherwise, is limited to the insurance placed by it and Stone & Webster. Consequently, we grant Stone & Webster's motion to dismiss counts seven and eight of the amended complaint.[3]

**2.** When questioned at oral argument, LILCO indicated that insurance claims it has filed regarding damage to the diesels are being contested on the grounds that the insurance does not cover defects in the diesels or damage that results therefrom. To our knowledge, LILCO has not pursued any insurance claims for "incidental malpractice" or "contractual liability."

**3.** Although we dismiss these counts as a matter of law for failure to state claims upon which relief can be granted, we note that equitable considerations also support dismissal of the complaint against Stone & Webster. LILCO

was well aware of serious problems with the construction of Shoreham almost a decade ago, yet it took no action against Stone & Webster until recently. Only after this Court dismissed ten of the eleven counts of the original complaint against Delaval did LILCO add Stone & Webster as a defendant and alternate source from which to recover its alleged damages. Thus, we view with suspicion LILCO's belated attempt to pursue one it knew, or should have known, to be potentially culpable, after having chosen to bypass these claims for so long.

## III. *Plaintiff's Motion to File Second Amended Complaint*

In light of the above, we deny LILCO's motion to file a second amended pleading. The damage claims that LILCO seeks to add are subject to the same contractual exemption from liability discussed above. These exemptions and limitations also appear to moot LILCO's proposed additional counts against Stone & Webster for indemnity and contribution. But, the latter claims also fail for the reasons stated in dismissing similar claims against defendant Delaval. *See supra* pp. 241–42.

## CONCLUSION

In sum, Stone & Webster's motion to dismiss is granted in its entirety. LILCO's motion to file a second amended complaint is denied. Delaval's motion to dismiss counts one, two, four, five, and six of the amended complaint in their entirety, and the punitive damage claims in count three, is granted.[4]

SO ORDERED.

---

**4.** We are now back in exactly the posture this suit was in after our decision in *LILCO I.* The only remaining claim, against Delaval, is for breach of a future warranty to repair and replace the defective diesels. Regarding the parties' ongoing dispute as to what damages may be recoverable on this claim, it is worth reiterating our ruling in *LILCO I* on this matter. The plaintiff may only seek those that flow from a breach of this future warranty; conceivably, these could be direct, incidental, or consequential damages. *LILCO I,* 646 F.Supp. at 1459 n. 30. However, a contractual provision limits Delaval's liability for consequential damages. Since that provision is not unconscionable on its face, LILCO may only circumvent it upon a showing that the defendant acted in bad faith such that it should be estopped from invoking the limitations shield. *Id.* at 1458–59.