**GREATER NEW YORK AUTOMOBILE DEALERS ASSOCIATION, et al.,**
**Plaintiffs,**

v.

**ENVIRONMENTAL SYSTEMS TEST-ING, INC., f/k/a Environmental Systems Products, Inc., SPX Corporation and Snap–On Diagnostics (Manufacturing), a Division of IDMC, Inc.,; and Snap–On Diagnostics (Sales & Service), a Division of IDSC Holdings, Inc., Defendants.**

No. 00–CV–2862.

United States District Court,
E.D. New York.

March 14, 2002.

John S. Ciulla, Bellavia & Kassel, PC, Mineola, NY, for Plaintiffs.

Robert A. Weiner, McDermott, Will & Emery, George A. Salter, Hogan & Hartson L.L.P., Craig Brown, Luce, Forward, Hamilton & Scripps L.L.P., New York City, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Pending before this Court are Environmental Systems Testing, Inc., f/k/a Environmental Systems Products, Inc. ("ESP"), SPX Corporation ("SPX") and Snap–On Diagnostics (Manufacturing), a division of IDMC, Inc., and Snap–On Diagnostics (Sales & Service), a division of IDSC Holdings, Inc. (jointly referred to as "SUN") (referred to collectively herein as "Defendants") motions (1) for a more definite statement of the allegations contained in the complaint pursuant to Fed.R.Civ.P. 9(g), 10(b), and 12(e); (2) to dismiss Plaintiff Greater New York Automobile Dealers' Association ("GNYADA") as a party pursuant to Fed.R.Civ.P. 12(b)(6); and (3) to dismiss Plaintiffs' claims for negligence pursuant to Fed.R.Civ.P. 12(b)(6). Additionally, SUN has moved, in a separate motion, to dismiss the claims of seven of the individual SUN Plaintiffs [1] on the ground that choice of forum clauses in their respective contracts and/or leases require their claims against SUN to be litigated in Illinois or Wisconsin or, in the alternative, be severed from the present action and transferred to Wisconsin or Illinois pursuant to Fed.R.Civ.P. 12(b)(3).

On March 29, 2000, Plaintiff GNYADA, an automobile trade association, and 148 individual automobile dealerships located in New York State alleging membership in GNYADA (collectively referred to as "Plaintiffs"), commenced this action in the Supreme Court, County of Nassau against Defendants. Defendants removed the action to Federal district court on May 18, 2000 pursuant to the Court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332. On July 17, 2000, Plaintiffs filed a first amended complaint and on August 9, 2000, Plaintiffs filed a fifteen count second amended complaint (the "Am. Compl."), bringing the total number of individual automobile dealership Plaintiffs to 155.

## FACTUAL ALLEGATIONS

GNYADA is a not-for-profit corporation and an association of automobile dealers located in New York. Am. Compl. ¶¶ 1–2. The remaining 155 Plaintiffs are automobile dealers organized under the laws of New York and are members of GNYADA. See id. at ¶ 2. The individual dealer Plaintiffs are each engaged in the business of selling and servicing various makes and models of new and used motor vehicles. See id. at ¶ 4. Each of the individual dealer Plaintiffs is licensed as an emissions inspection station in the State of New York. See id. at ¶ 5.

Defendants are foreign corporations authorized to transact business and, are actually doing business, in New York. Am. Compl. ¶¶ 6–8. Defendants design, manufacture, distribute and sell, among other products, equipment used in the testing of automobile emissions. See id. at ¶ 9.

In or about January 1997, the State of New York, in compliance with the environmental and pollution standards established by the Federal Environmental Protection Agency and the New York State Department of Environmental Conservation (the "DEC"), created more stringent testing standards governing automobile emissions. See id. at ¶ 10. In response, the New York State Department of Motor Vehicles ("DMV") and the DEC created and implemented the New York State High–Enhanced Emission Inspection Program (the "Emission Program"). See id. at ¶ 11. The Emission Program mandated new emissions testing standards and procedures and in order to continue to inspect automobiles under the Emission Program, inspection stations were required to purchase or lease newly manufactured testing equipment. See id. at ¶¶ 12, 14. In particular, all licensed inspection stations were required to purchase or lease a new gas

---

1. The following plaintiffs shall be referred to herein as "SUN Plaintiffs": Amity Toyota, Inc., Arroway Chevrolet Corp., Automall Nissan, Inc., Van Buren Truck Sales, Inc. d/b/a Van Buren Buick Pontiac GMC, Bright Bay Lincoln–Mercury, Inc., Classic Automobiles Inc., Lafres Ford, Inc., Malmstrom Pontiac/Suzuki, LTD., Manhattan Motorcars, Inc., B & L Toyota Inc., and Bi–County Saturn, LLC d/b/a Saturn of Huntington.

analyzer, dynamometer, video camera and V–MAS analyzer ("emissions testing equipment") and to have their certified inspectors undergo training to learn to operate the emissions testing equipment. *See id.* at ¶¶ 14–15.

The DMV approved three manufacturers, ESP, SPX and SUN, to manufacture this equipment. Am. Compl. ¶¶ 17–18. Accordingly, the Defendants, in conjunction with the DMV, implemented specifications for and manufactured the emissions testing equipment. *See id.* at ¶ 19.

In 1997 and 1998, the ESP Plaintiffs [2] purchased or leased the emissions testing equipment from ESP pursuant to sale or lease contracts. Am. Compl. ¶ 20. In 1997 and 1998, the SPX Plaintiffs [3] purchased or leased the emissions testing equipment from SPX pursuant to sale or lease contracts. *See id.* at ¶ 21. In 1997 and 1998, the SUN

2. The following plaintiffs shall be referred to herein as "ESP Plaintiffs": Anchor So. Shore Audi, Inc., Angiuli Dodge, Ins., B.F. Curry Chevrolet, Inc., Bob Lee Motors, Inc., Boss Chrysler–Plymouth–Jeep, Inc., Bridge Chrysler–Plymouth/Jeep, Inc., Bronx VW Corp., City Cadillac-Oldsmobile, Inc., City Line Auto Enterprises, Inc. d/b/a/ City–Line Cadillac Oldsmobile, Scarsdale Motors, Inc. d/b/a Curry Acura, Curry Chevrolet Sales 7 Service, Inc., Mohansic Corp. d/b/a Curry Ford/Subaru, Curry Motors, Inc. d/b/a/ Curry Honda, DiBlasi Motors, Inc., Donaldson's, Inc., Fairway Ford, Inc., Frank Chevrolet Corp., Franklin Square Ford, Inc., G/C Volkswagen Corp., Geis Buick–Oldsmobile, Cadillac, Inc., Gidron Oldsmobile–Cadillac, LLC, Grand Prix Performance, LTD., Gregoris Motors, Inc., RAB Motors, Inc. d/b/a H.B. Chevrolet, Helms Bros., Inc., Bay Shore Automotive, Inc. d/b/a Hillside Acura, Karp Motors, Inc., Kings Plaza Jeep Eagle Chrysler Plymouth, Inc., Koeppel Ford of Mineola, Inc., Danjo Automotive Corp. d/b/a Koeppel Mazda/Hyundai, Airport Motors, Inc. d/b/a Koeppel Mitsubishi, Long Island U.K. Auto, Inc. d/b/a Land Rover Glen Cove, Long Island U.K. Auto, Inc. d/b/a Land Rover Massapequa, Long Island U.K. Auto, Inc. d/b/a Land Rover of Smithtown, Lazarus Freres & Co., Inc. d/b/a Land Rover of Southhampton, Lichtenberg Motors, Inc., Mack Markowitz, Inc., Merrick Dodge, Inc., Metro Chrysler–Plymouth–Dodge–Jeep–Eagle, Inc., Raymond Buick, Inc. d/b/a Michael Pontiac Cadillac Oldsmobile, Monahan Ford Corp., Mullen Motors, Inc., Newins Bay Shore Ford, Inc., North Shore Infiniti, Inc., Old Country Dodge, Inc., Park Dodge Corp., Park Inn Ford, Inc., Pastor Chevrolet, Inc., Patchogue Motors, Inc., Paul Conte Cadillac, Inc., Paul Conte Chevrolet, Inc., Queensboro Toyota, Inc., Ramp Chevrolet, Inc., Reese Bros. Dodge, Inc., Regan Pontiac-Buick–GMC Truck, Inc., Riverdale Chrysler–Plymouth–Jeep–Eagle, Inc., Riverhead Dodge, Inc., Robert Chevrolet, Inc., Nanuet Chrysler, Plymouth, Jeep, Eagle, Inc. d/b/a Rockland Auto Plaza, Ryan Chrysler–Plymouth Inc., Salerno Chrysler–Plymouth–Dodge, Inc., Bi–County Saturn, LLC d/b/a Saturn of Hicksville, Saturn of Massapequa, Inc., Saturn of Smithtown, Inc., Saturn of Smithtown, Inc. d/b/a Saturn of the Hamptons, Sholz Buick–Pontiac, Inc., Smith Haven CPJ/Suzuki, Smithtown Nissan, Inc., Smithtown Toyota Corp., Sportique Motors, LTD., Star Auto Sales of Bayside, Inc., Star Nissan, Inc., Storms Motors, Inc., Sun Auto Group, Inc., Sunrise Toyota, LP, Thomas Dodge Corp. of New York d/b/a/ Thomas Dodge–Subaru, Toyota City, Inc., Universal Auto Group, Inc., 396 Merrick Road Auto Corp d/b/a Valley Stream Toyota, and Long Island Swedish Auto, Inc. d/b/a Volvoville, USA.

3. The following plaintiffs shall be referred to herein as "SPX Plaintiffs": Kinney Motors, Inc. d/b/a Apple Chevrolet–Oldsmobile, Apple Motors, Inc., Aspen Ford, Inc., Automall Hyundai, Inc. d/b/a Atlantic Automall, Babylon Chysler–Plymouth–Honda, Inc., Babylon Ford, Inc., Bast Chevrolet, Inc., Bay Ridge Honda, Inc., Beltway Buick–Subaru, Inc., Big Dee Auto Sales, Inc., Bill Kolb Jr. Ford, Inc., Country Ford, LTD., Country Imported Car Corp., Dan Buckey Ford, Inc., Dick Gidron Ford Inc., Dobler Chevrolet, Inc., East Hills Chevrolet, Oldsmobile Inc., East Hills Chrysler–Plymouth–Jeep–Eagle, Inc., Hassel Auto West, Inc., Hassel Auto, Inc., Hassel Motor, Inc., Hassel Volvo Inc., Hempstead Lincoln–Mercury Motors Corp., Hillside Honda, Inc., Samon Auto Sales, Inc. d/b/a Huntington Dodge, Imported Motor Cars of Long Island, LTD. d/b/a Island Acura–Saab, Island Ford, Inc., Kurland Cadillac–Oldsmobile–GMC Truck, Inc., Lasorsa, Buick–Pontiac–Chevrolet Inc., Martin Motor Sales, Inc. d/b/a Martin Honda, Marty Motors Corp., McCarvilee Ford, Inc., McDaniel Ford, Inc., Rockville Centre Motors, Inc. d/b/a Morrissey Pontiac–GMC Truck, New Rochelle Chevrolet, Inc., Nissan 112 Sales Corp., North Coast Subaru Corp., North Shore Honda–Saab, Inc., Northport Ford, Inc., Paragon Motors of Woodside, Inc. d/b/a Paragon Honda, Park Lincoln–Mercury, Inc., Pepe Motors Corp., Popular Ford Sales, Inc., Potamkin Toyota Corp., Queens Boulevard L/M, Inc., Rockland Toyota, Roslyn Buick–Pontiac–GMC, Inc., Saturn of Larchmont, Inc., Saturn of Long Island City, Inc., Saturn of White Plains, Inc., Scarsdale Ford, Inc., Security Auto Sales, Inc. d/b/a Security Dodge, Six Kids, Inc. d/b/a Manhasset Mitsubishi, Smith–Cairns Ford, Inc., Huntington Chrysler Plymouth, Inc. d/b/a Town & Country Jeep–Eagle–Chrysler–Plymouth, West Babylon Chevrolet–GEO, Inc., Civic Center Motors, LTD. d/b/a White Plains Honda, and Yonkers Motors, Corp. d/b/a Yonkers Honda.

Plaintiffs purchased or leased the emissions testing equipment from SUN pursuant to sale or lease contracts. *See id.* at ¶ 22. Each of the contracts or leases entered into by each plaintiff contained "various warranties including, *inter alia,* an express warranty concerning the emissions testing equipment." *Id.* at ¶ 23. According to the terms of the various sale and lease contracts, "defendants were obligated and agreed to provide training to the dealer Plaintiffs to operate the emissions testing equipment." *Id.* at ¶ 24. Since the purchase or lease of the emissions testing equipment by the Dealer Plaintiffs, several problems have occurred, including, but not limited to:

a. incomplete and substandard installation of emissions testing equipment;

b. excessive noise levels when dynamometer is in use;

c. systemic and continuing equipment software "glitches" and failures;

d. systemic and continuing breakdown of equipment accessories including, but not limited to, safety straps, belts, bolts, and hoses;

e. breakdown of emissions testing equipment on a regular basis rendering it impossible to perform inspections;

f. defendants' failure to provide timely repair service pursuant to warranties;

g. failure of emissions testing equipment to perform inspections within reasonable period of time;

h. defendants' failure to properly repair and service emissions testing equipment under warranties; and

i. incomplete and inadequate training of technicians.

*Id.* at ¶ 25. Despite timely notification by the dealer Plaintiffs of the alleged defects and malfunctioning, Defendants have allegedly failed to provide timely and proper service, repair and/or replacement of the emissions testing equipment. Am. Compl. ¶¶ 26–31. As a result, Plaintiffs are seeking repair and/or replacement of the emissions testing equipment, or alternatively, a refund of all monies paid by Plaintiffs under either the sale contract or lease together with money damages in an amount no less than $25,000,000 (twenty-five million dollars) for the alleged loss of business and good will. Plaintiffs' second amended complaint raises five causes of action: (1) breach of express warranty; (2) breach of an implied warranty of merchantability; (3) breach of an implied warranty for a particular purpose; (4) negligence; and (5) breach of contract.

For the following reasons, Defendants' motion for a more definite statement of the allegations is DENIED, motion to dismiss GNYADA as a party is GRANTED, motion to dismiss Plaintiffs' claim alleging negligence is GRANTED and Defendant SUN's motion to dismiss the claims of certain Plaintiffs based upon forum selection clauses is GRANTED.

## DISCUSSION

### I. Defendants' Motion For a More Definite Statement

■ Defendants move for a more definite statement pursuant to Rules 9(g), 10(b), and 12(e) of the Federal Rules of Civil Procedure. A motion for a more definite statement may be granted if "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). Motions pursuant to Rule 12(e) are disfavored and should not be granted " 'unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.' " *Bower v. Weisman,* 639 F.Supp. 532, 538 (S.D.N.Y.1986) (quoting *Boothe v. TRW Credit Data,* 523 F.Supp. 631, 635 (S.D.N.Y. 1981)); *see generally* 5 Wright & Miller, *Federal Practice and Procedure:* Civil 2d §§ 1376–77 (1990 and Supp.1994).

■ The purpose of the complaint is to "inform the defendant as to the general nature of the action and as to the incident out of which a cause of action arose." *Bower,* 639 F.Supp. at 538; *see also Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). Accordingly, Rule 12(e) is "designed to remedy unintelligible pleadings, not merely to correct for lack of detail."

*Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 35 (S.D.N.Y.1992), *aff'd* 23 F.3d 398 (2d Cir. 1994) (citations omitted). A motion for a more definite statement should not be granted if the complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8. When defendants have notice of the general nature of the claims against them, "[t]he preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings," rather than to require plaintiffs to more specifically plead their causes of action. *Boothe,* 523 F.Supp. at 635.

■ Defendants argue that Plaintiffs' complaint is vague and ambiguous in that it fails to delineate which facts are intended to support which claims. Defendants' Memorandum of Law in Support of a More Definite Statement of the Allegations Contained in the Complaint, To Dismiss Plaintiff Greater New York Automobile Dealers' Association as a Party and to Dismiss Plaintiffs' Claims for Negligence, pg. 8 ("Defs.' Mem."). Specifically, Defendants request that each individual dealer Plaintiff (1) identify the contracts or leases and the parties thereto upon which each of their claims are based; (2) set forth the dates on which they entered in to those contracts or leases; (3) set forth the dates when any alleged warranties, leases or contracts were made or breached; (4) identify the lease or contract provisions allegedly breached; and (5) identify the events, conditions or occurrences that Defendants allegedly breached under the contract or lease provisions. Defs.' Mem. at pg. 9–10.

Plaintiffs argue that the elements of a breach of contract claim need not be separately pleaded and that they have provided a short and plain statement of the claims as required under Fed.R.Civ.P. 8. Plaintiffs' Memorandum of Law in Opposition to the Joint Motion For a More Definite Statement of the Allegations Contained in the Complaint, To Dismiss Plaintiff Greater New York Automobile Dealers' Association as a Party and To Dismiss Plaintiffs' Claims for Negligence, pg. 11 ("Opp. Br.").

While the complaint does not provide specific details of each individual plaintiff's contract or lease agreement, date of the agreement, or the contract or lease provisions allegedly breached, the second amended complaint adequately informs Defendants of the nature of Plaintiffs' claims and is sufficient for Defendants to frame a responsive pleading. *See Kok v. First Unum Life Ins. Co.,* 154 F.Supp.2d 777, 782 (S.D.N.Y.2001) (stating that the plaintiff's "skimpy" pleading was not "unintelligible"); *777388 Ontario Ltd. v. Lencore Acoustics Corp.,* 105 F.Supp.2d 56, 65–66 (E.D.N.Y.2000)(denying motion pursuant to Rule 12(e) because discovery is appropriate method for obtaining more information about the specific issues raised in plaintiff's complaint); *Markovic v. New York City Sch. Constr. Auth.,* No. 99 Civ. 10339(AGS), 2000 WL 1290604, at *3–4 (S.D.N.Y. Sept. 13, 2000) (denying Rule 12(e) motion because defendants failed to allege that the complaint was "unintelligible"); *Towers Tenant Ass'n, Inc. v. Towers Ltd. P'ship,* 563 F.Supp. 566, 568–70 (D.D.C.1983) (denying Rule 12(e) motion because references in the complaint to "promises," "employees" and "representations," without more specific dates, times, names and places, satisfied Rule 8).

■ Secondly, Defendants argue that the amended complaint is not specific pursuant to the requirements of Rule 9(g). Defendants assert that Plaintiffs do not attempt to itemize the special damages of loss of business and loss of good will separate and apart from the other damages sought. Defs.' Mem., at pg. 10. Defendants also argue that the amended complaint is unclear as to whether the $25,000,000 (twenty-five million dollar) figure represents damages to each dealer Plaintiff individually, to a specific group of dealer Plaintiffs, or to all of the Plaintiffs. Defs.' Mem., at pg. 10. Plaintiffs contend that pleading of special damages is not required in this case as it is not a necessary element of their claims and, in any event, they have plead their claim with the required specificity. Opp. Br., at pg. 12.

■ Rule 9(g) requires that "[w]hen items of special damages are claimed, they shall be specifically stated." Fed.R.Civ.P. 9(g); *see also* 5 Wright & Miller, *Federal Practice and Procedure* 2d ed. § 1311, at 710–11 (1990).

Although Rule 9 does not define special damages, special damages have been described as "those resulting from the commission in question and not normally associated with the claim." *Bensen v. American Ultramar Ltd.*, No. 92 Civ. 4420(KMW)(NRB), 1997 WL 317343, at *10 (S.D.N.Y. June 12, 1997) (quoting 2 Jeffrey A. Parness et al., *Moore's Federal Practice* ¶ 9.08 (3d ed.1997)). Special damages "are damages that are unusual for the type of claim in question—that are not the natural damages associated with such a claim." *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir.1995).

The Second Circuit had described special damages as one of the elements of a prima facie tort claim. *See Twin Lab. Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990); *see also Hogan v. Wal–Mart Stores, Inc.*, 167 F.3d 781, 783 (2d Cir.1999)(finding that aggravation of a pre-existing injury is an element of special damages which must be specifically pleaded); *Procter & Gamble Co. v. Quality King Distrib., Inc.*, 974 F.Supp. 190 (E.D.N.Y.1997) (dismissing claims of prima facie tort, tortious interference with business relations and unfair competition for failure to adequately plead special damages); *PdP Parfums de Paris, S.A. v. Int'l Designer Fragrances, Inc.*, 901 F.Supp. 581, 585 (E.D.N.Y.1995) (stating that damages for harm to reputation in an action for fraud constitutes special damages under Rule 9(g) and must be specifically stated). In this case, Plaintiffs' claims for damages for loss of business and loss of good will arise under and are directly related to the breach of contract claim, not a tort claim. (As will be discussed in Part III of this opinion, Plaintiffs' claims for negligence fail as a matter of law.) Thus, Plaintiffs do not invoke a claim for "special" damages because such damages are inappropriate under a breach of contract claim for recovery. *See John J. Kirlin, Inc., v. Conopco, Inc.*, No. 94 Civ. 2675(AGS), 1995 WL 15468, at *3 (S.D.N.Y. Jan. 17, 1995).

■ Thirdly, Defendants argue for a more definite statement pursuant to Rule 10(b). Rule 10(b) requires that:

All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

Fed.R.Civ.P. 10(b). Defendants allege that Plaintiffs have combined claims based upon separate transactions or occurrences into a series of "five blunderbuss claims" and request that each Plaintiff separately plead its claims as against a particular Defendant. Defs.' Mem., at pg. 5, 7. Plaintiffs argue that Rule 10(b) only requires separation of the transactions or occurrences for each claim when it is necessary to "facilitate the clear presentation" of the claims. Opp. Br., at pg. 6. Plaintiffs acknowledge that there may be some differences in degree concerning the problems suffered by each Plaintiff but claim they have provided a short and plain statement that is more than adequate to put Defendants on notice of the claims in compliance with Rule 10(b). Opp. Br., at pg. 8–9.

■ Courts may deny a Rule 12(e) motion even where a complaint does not specify which acts were committed by whom. *See Palm Springs Med. Clinic, Inc. v. Desert Hosp.*, 628 F.Supp. 454, 464 (C.D.Cal.1986). "Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." James William Moore, et al., *Moore's Federal Practice*, § 10.03[2][a] (3d ed.1997). However, Rule 8 of the Federal Rules of Civil Procedure "permits great generality in the statement of the circumstances which form the basis of plaintiff's claim as long as defendants are given fair notice of the claim." *Dunlop–McCullen v. Local 1–S RWDSU–AFL–CIO*, No. 94 Civ. 1254(JSM), 1994 WL 478495, at *3 (S.D.N.Y. Sept. 1, 1994). Rule 8 merely "requires the pleader to disclose adequate information regarding the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it." *Id.* (citing 5 Wright & Miller, *Federal Practice & Proce-*

*dure* § 1202 at 73 (2d ed.1990)). Even in cases where a plaintiff's complaint is not a model of clarity and is technically in violation of Rule 10(b), the court may conclude that a more definite statement is not required. *See id.* at *1.

Defendants argue "[w]here ... plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading." Defs.' Mem., at pg. 5 (citing *Anderson v. Dist. Bd. of Trs. of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir.1996)). Plaintiffs argue that Defendants have not satisfied their burden to show that the complaint is "excessively vague and ambiguous" and that Defendants have sufficient information to form their answer. Opp. Br., at pg. 10–11.

Although Plaintiffs set forth 15 causes of action, it is clear which claims are directed towards which Defendant. For example, Plaintiffs' first claim asserts a cause of action by ESP Plaintiffs against ESP for breach of express warranty, the second claim asserts a cause of action by SPX Plaintiffs against SPX for breach of express warranty, and the third claim asserts a cause of action by SUN Plaintiffs against SUN for breach of express warranty. Am. Compl. ¶¶ 32–55. Plaintiffs' amended complaint follows the same pattern for the claims of breach of implied warranty of merchantability (Am.Compl. ¶¶ 56–79), breach of implied warranty for a particular purpose (Am.Compl. ¶¶ 80–103), negligence (Am.Compl. ¶¶ 104–27) and breach of contract (Am.Compl. ¶¶ 128–39). By separating the claims in this manner, Plaintiffs have given Defendants notice of which claims are directed towards each Defendant. Accordingly, Plaintiffs' complaint is not so vague as to require a more definite statement and Defendants' motion for a more definite statement is DENIED.

## II. Defendants' Motion to Dismiss GNYADA as a Plaintiff

### A. Standing to Sue

■ Defendants seek to dismiss GNYADA as a plaintiff for lack of standing and for failure to state a claim for which relief may be granted. Defs.' Mem., at pg. 11–13. The Supreme Court has determined that an association may file suit on its own behalf "to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). To sue on their own behalf, an organization must " 'meet [ ] the same standing test that applies to individuals ... [by] show[ing] actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision.' " *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir.1998) (quoting *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C.Cir. 1990)). In addition, an organization or association may also have standing to sue when it seeks to assert the rights of its members under the doctrine of associational standing. *See Warth*, 422 U.S. at 515, 95 S.Ct. at 2213. In this case, GNYADA has not alleged any injury to itself as an association. Accordingly, GNYADA must meet the requirements for associational standing to be permitted to remain in this action.

■ To bring suit on behalf of its members, an association must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *see also Irish Lesbian and Gay Org.*, 143 F.3d at 649 (finding that an Irish lesbian and gay organization did not have associational standing to sue on behalf of its members because the claims that its members had suffered from humiliation, had lost their jobs, and had been told they were "not Irish" required participation of the individual members in the lawsuit); *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 595–97 (2d Cir.1993) (concluding that an

association representing landlords did not have associational standing because it did not satisfy the third prong of the *Hunt* test); *Ostrom v. O'Hare,* 160 F.Supp.2d 486, 492 (E.D.N.Y.2001) (applying the *Hunt* test to determine that a county political party had associational standing to sue on behalf of its members).

Defendants acknowledge that GNYADA satisfies the first two prongs of the test for organizational standing set forth in *Hunt.* Defs.' Mem., at pg. 14. Defendants argue that GNYADA has no standing pursuant to the third factor of the *Hunt* test because the claims arise almost exclusively from the contractual relationship between the individual dealerships and the Defendants and, therefore, participation in this lawsuit by the individual members of the association is required. *See id.*

Plaintiffs argue that although the dealer Plaintiffs "will be required to participate in the lawsuit as it involves their respective claims for damages based upon the business losses and good will," the dealer Plaintiffs "will not necessarily" be required to participate for claims involving a request for repair/and or replacement of the emissions testing equipment. Opp. Br., at pg. 19. Plaintiffs contend that GNYADA should be permitted to remain a party in the lawsuit to represent the interests of the member dealers that have purchased or leased the emissions testing equipment but who are not currently named as plaintiffs. Opp. Br., at pg. 19.

Pursuant to the third prong of the *Hunt* test, "the Supreme Court has explained that an organization lacks standing to sue for money damages on behalf of its members if 'the damage claims [of the members] are not common to the entire membership, nor shared by all in equal degree,' so that 'both the fact and extent of injury would require individualized proof.'" *Sun City Taxpayers' Ass'n v. Citizens Util. Co.,* 45 F.3d 58, 61 (2d Cir.1995) (quoting *Warth,* 422 U.S. at 515–16, 95 S.Ct. at 2214). As previously stated, GNYADA makes no claim for damages arising from injury to itself but rather requests monetary relief for alleged injuries to its members. Whatever injury may have been suffered by each individual dealer plaintiff is unique to that individual and "both the fact and the extent of the injury would require individualized proof." *Warth,* 422 U.S. at 515–16, 95 S.Ct. at 2214. Therefore, each member of GNYADA that claims injury as a result of Defendants' practices must be a party to the suit and GNYADA has no standing to claim damages on their behalf. *See id.; see also Irish Lesbian and Gay Org.,* 143 F.3d at 650 n. 5; *Sun City Taxpayers' Ass'n,* 45 F.3d at 61; *Rent Stabilization Ass'n of City of New York,* 5 F.3d at 596. Moreover, " 'no federal court has allowed an association standing to seek monetary relief on behalf of its members.' " *Legal Aid Soc'y v. City of New York,* 114 F.Supp.2d 204, 214 (S.D.N.Y. 2000) (quoting *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp.,* 919 F.2d 1398, 1400 (9th Cir. 1990)). Accordingly, GNYADA does not have associational standing to sue on behalf of its members.

### B. Motion to Dismiss for Failure to State a Claim

Without associational standing, GNYADA must assert a claim on its own behalf in order to remain a party in the case. Defendants further argue that GNYADA should be dismissed, without leave to amend, for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Fed. R.Civ.P. Defs.' Mem., at pg. 11–12. Plaintiffs have failed to respond to the assertion that GNYADA has failed to state a claim upon which relief may be granted in their opposition brief, and instead have argued that GNYADA has standing to sue.

A district court should grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir.1994). In applying this standard, a district court must "read the facts alleged

in the complaint in the light most favorable" to the plaintiff and accept these factual allegations as true. *H.J. Inc.*, 492 U.S. at 249, 109 S.Ct. at 2906; *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.*, 23 F.3d 636, 639 (2d Cir.1994); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed.R.Civ.P. 8(a)(2) to demonstrate the liberal system of "notice pleading" employed by the Federal Rules of Civil Procedure).

The Court's duty is "merely to assess the legal feasibility of the [second amended] complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). *Accord Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitle to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123–24 (2d Cir.1991) (noting that the plaintiff is not compelled to prove his or her case at the pleading stage). Additionally, a claimant is not required to set out in detail the facts upon which he or she bases a claim. *See Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A claimant need only give a statement of his or her claim that will give defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Id.* Therefore, where a complaint is filed that charges each element necessary to recover, dismissal of the case for failure to set out evidential facts can seldom be warranted. *See United States v. Employing Plasterers Ass'n of Chicago*, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987). It is within this framework that the Court addresses the present motion.

In the complaint, GNYADA alleges no cause of action on its own behalf against ESP, SPX or SUN. The only references to GNYADA are contained in the first three paragraphs of the amended complaint: (1) "plaintiff, GNYADA, was and still is a Not–For–Profit corporation duly organized under and existing by virtue of the laws of the State of New York;" (2) "GNYADA was and still is an association of automobile dealers geographically located in the State of New York;" and (3) "the remaining plaintiffs ... are members of GNYADA." Am. Compl. ¶¶ 1–3. Although the complaint asserts various claims by the ESP Plaintiffs, SPX Plaintiffs, and SUN Plaintiffs, no claim is made on behalf of GNYADA.

Accordingly, GNYADA does not state a claim upon which relief may be granted and further, GNYADA lacks associational standing to sue. Defendants' motion to dismiss GNYADA as a party is GRANTED.

## III. Defendants' Motion to Dismiss Plaintiffs' Claims for Negligence

As noted above, a district court should grant a motion to dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc.*, 492 U.S. at 249–50, 109 S.Ct. at 2906 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). As such, the Court will apply the motion to dismiss standard set forth in the discussion above.

Defendants contend that Plaintiffs' Tenth, Eleventh and Twelfth claims for negligence fail as a matter of law and should be dismissed. Defs.' Mem., at pg. 14–15. Plaintiffs argue that (1) Defendants owed a legal duty to Plaintiffs, which arose from their contracts with the Plaintiffs; (2) the Plaintiffs were not remote purchasers of the emissions testing equipment; and (3) the Plaintiffs' claims are not based upon damage to the emission testing equipment itself. Opp. Br., at pg. 15. Plaintiffs seek repair and/or replacement of the emissions testing equip-

ment or, in the alternative, a refund of all monies paid by the individual dealer plaintiffs under the sale contract or lease, together with money damages for loss of business and loss of good will. Am. Compl. pg. 31–32.

■■■■ "To sustain a claim for negligence, a plaintiff must show that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff suffered damages as a proximate result of that breach." *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir.1997). However, New York State law also provides that

> a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.[ ] Merely charging a breach of a "duty of care," employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.

*Bell Sports, Inc. v. Sys. Software Assocs. Inc.*, 45 F.Supp.2d 220, 227 (E.D.N.Y.1999) (quoting *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)). Plaintiffs contend that Defendants had an independent legal duty to manufacture equipment that would properly test emissions in compliance with the Program. Opp. Br., at pg. 16. Defendants maintain that there are no public policy reasons that support the imposition of tort liability arising from contractually-based economic loss. Defs.' Mem., at pg. 15–16. It is clear that Plaintiffs have not alleged any legal duty on the part of the Defendants other than the duties arising under the contract. Without any legal duty, Plaintiffs cannot satisfy the elements necessary to state a claim of negligence. *See Mindset Ltd. v. Quality Controlled Biochemicals, Inc.*, No. 99 Civ. 6070(AGS), 2000 WL 28167, at *3, 2000 U.S. Dist. LEXIS 268, at *9 (Jan. 14, 2000 S.D.N.Y.).

■■■■ Furthermore, the Second Circuit has determined that New York does not recognize a tort cause of action when only economic loss is sought. *See County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir.1984); *McDonald's Corp. v. Hinksman*, No. 92 Civ. 3187(DGI), 1999 WL 441468, at *16 (E.D.N.Y. May 28, 1999) (dismissing plaintiffs' negligence claim because "business losses are economic losses, not generally recoverable under a negligence theory"); *Long Island Lighting Co. v. Stone & Webster Eng'g Corp.*, 839 F.Supp. 183, 187 (E.D.N.Y.1993). Loss of business and loss of good will are generally classified as "economic" damages. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986) (stating that "resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law."); *Land Mine Enters. v. Sylvester Builders, Inc.*, 74 F.Supp.2d 401, 406 (S.D.N.Y.1999) (defining "lost profits" as economic damages); *Long Island Lighting Co.*, 839 F.Supp. at 185 (holding that LILCO's claims for damages for curing problems created by defective equipment were "economic" damages). Economic loss is recoverable in a breach of warranty or breach of contract case in order to allow the injured party to receive the benefit of his or her bargain. *See Black Radio Network, Inc. v. NYNEX Corp.*, Nos. 96 Civ. 4138(DC), 96 Civ. 4139(DC), 96 Civ. 4141(DC), 97 Civ. 5404(DC), 98 Civ. 2593(DC), 99 Civ. 0304(DC), 2000 WL 64874, at *3 (S.D.N.Y. Jan. 25, 2000) (citations omitted). "Negligence claims, however, 'seek to make the injured party whole' " and attempt to place him in the position he was in before the injury occurred. *Id* (quoting *Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978)). In this case, Plaintiffs have not alleged an injury to person or property so they cannot seek to recover benefit of the bargain damages by asserting claims for negligence. *See Carmania Corp. v. Hambrecht Terrell Int'l*, 705 F.Supp. 936, 938 (S.D.N.Y.1989) (stating that "New York law ... restrict[s] plaintiffs who have suffered 'economic loss,' but not personal or property injury, to an action for the benefits of their bargains. If the damages

suffered are of the type remediable in contract, a plaintiff may not recover in tort").

Because Plaintiffs have not established that Defendants had a legal duty independent of the contracts and have characterized all of their damages as economic, their negligence claims must fail as a matter of law. Accordingly, Defendants' motion to dismiss Plaintiffs' claims for negligence is GRANTED.

## VI. Defendant SUN's Motion to Dismiss the Claims of Certain Plaintiffs Based on Forum Selection Clauses

SUN has moved, pursuant to Fed.R.Civ.P. 12(b)(3), to (1) dismiss the claims of several plaintiffs who entered into contracts with SUN; or alternatively, (2) to sever those claims and transfer them to the United States District Court for the Northern District of Illinois or the United States District Court for the Eastern District of Wisconsin pursuant to Fed.R.Civ.P. 21 and 28 U.S.C. §§ 1404(a) and 1406. Memorandum of Law in Support of SUN's Motion to Dismiss the Claims of Certain Plaintiffs Based Upon Forum Selection Clauses That Require Them to Pursue Their Claims Against SUN in Other States, Or In the Alternative, To Sever and Transfer Those Claims, at pg. 1 ("SUN Mem."). Of the one hundred fifty five plaintiffs in the action, only eleven plaintiffs have asserted claims against SUN (the "SUN plaintiffs"). SUN seeks dismissal or transfer of the claims of seven of the SUN plaintiffs[4] based upon mandatory forum selection clauses contained in their sales or lease agreements. SUN Mem., at p. 2.

Six of the SUN plaintiffs (the "Illinois Plaintiffs")[5] entered into sales agreements with SUN that contained forum selection clauses providing that any suit initiated by the purchaser must be brought in the State of Illinois, and in no other forum. SUN Mem., at pg. 2. The Illinois forum selection

clause provided, in bold and capitalized typeface larger than the surrounding text, that:

PURCHASER AGREES TO SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF ILLINOIS IN ANY ACTION TAKEN BY SELLER RELATING TO THIS AGREEMENT OR ANY PROVISIONS, RIGHTS OR REMEDIES HEREOF. PURCHASER FURTHER AGREES THAT ANY ACTION TAKEN BY PURCHASER AGAINST SELLER RELATING TO THIS AGREEMENT OR ANY PROVISIONS, RIGHTS, OR REMEDIES HEREOF SHALL BE TAKEN IN THE COURTS OF THE STATE OF ILLINOIS AND SHALL NOT BE TAKEN IN ANY OTHER JURISDICTION. PURCHASER RECOGNIZES THAT THIS COVENANT IS AN ESSENTIAL PROVISION OF THIS AGREEMENT, THE ABSENCE OF WHICH WOULD MATERIALLY ALTER THE CONSIDERATION GIVEN BY PURCHASER TO SELLER HEREUNDER. PURCHASER HEREBY WAIVES TRIAL BY JURY.

Declaration of Brian L. Plott in Support of SUN's Motion to Dismiss Based Upon Forum Selection Clauses or, in the alternative, To Sever and Transfer Venue, Ex. A–F, ¶ 15 ("Plott Decl."). Immediately above this clause in the sales agreement is a choice of law clause which provides that "the validity, performance and construction of the Agreement shall be governed by the laws of the State of Illinois." Plott Decl., Ex. A–F, ¶ 15.

Bi–County Saturn, LLC d/b/a Saturn of Huntington ("Saturn") is also one of the SUN Plaintiffs. Saturn acquired SUN emissions testing equipment on or about August 2, 1999, in a finance lease transaction between John Bean Company ("Bean"), as Lessor, and Saturn. SUN Mem., at pg. 3. Paragraph 13 of the sales agreement between

---

4. Of the eleven SUN Plaintiffs, only the following are subject to choice of forum clauses: Arroway Chevrolet, Van Buren Truck Sales, Inc. d/b/a Van Buren Buick Pontiac GMC, Bright Bay Lincoln–Mercury, Inc., Classic Automobiles Corp., Manhattan Motorcars, Inc., B & L Toyota Inc., and Bi–County Saturn, LLC d/b/a Saturn of Huntington.

5. The following plaintiffs shall be referred to herein as the "Illinois Plaintiffs": Arroway Chevrolet, Van Buren Truck Sales, Inc. d/b/a Van Buren Buick Pontiac GMC, Bright Bay Lincoln–Mercury, Inc., Classic Automobiles Corp., Manhattan Motorcars, Inc., and B & L Toyota Inc.

Bean and IDSC Holdings, Inc. ("IDSC") provides that "any disputes or claims arising out of this Order shall be determined by a court of competent jurisdiction in the STATE of WISCONSIN. THIS ORDER SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF WISCONSIN." Plott Decl., Ex. G at ¶ 13.

### A. Enforceability of Forum Selection Clauses

■ It is well settled that parties may bargain in advance to select the forum in which their disputes will be adjudicated. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The United States Supreme Court has stated that when a forum selection clause is "made in an arm's-length negotiation by experienced and sophisticated businessmen . . . absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *Bremen,* 407 U.S. at 12, 92 S.Ct. at 1914. The Second Circuit has developed a strong policy of honoring forum selection clauses as written. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997); *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1362 (2d Cir.1993); *Bense v. Interstate Battery Sys. of America, Inc.,* 683 F.2d 718, 720 (2d Cir.1982). Forum selection clauses are presumptively enforceable unless there is "a clear showing that the clauses are 'unreasonable' under the circumstances." *Roby,* 996 F.2d at 1363 (quoting *Bremen,* 407 U.S. at 10, 92 S.Ct. at 1913). The "unreasonable" exception is construed narrowly. *See id.* A forum selection clause is unenforceable

(1) if [its] incorporation into the agreement was the result of fraud or overreaching;

(2) if the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum;

(3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or

(4) if the clauses contravene a strong public policy of the forum state.

*Id.* (quoting *Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916) (internal citations omitted). A plaintiff who brings suit in a forum other than the one designated by the forum selection clause carries the burden to make a "strong showing" in order to overcome the presumption of enforceability. *See New Moon Shipping Co., Ltd.,* 121 F.3d at 29.

■ Plaintiffs argue that the forum selection clauses should not be enforced against the Illinois Plaintiffs and Saturn because (1) the pre-selected forum is inconvenient; (2) the Illinois Plaintiffs and Saturn lacked any bargaining power when they purchased or leased the emissions testing equipment; (3) several of the SUN plaintiffs are not subject to the forum selection clauses which may result in inconsistent adjudications by this Court and the transferee courts if the claims are transferred; and (4) the State of New York has a substantial interest in the outcome of this case and its potential impact on the emissions testing program. Plaintiffs' Memorandum of Law in Opposition to SUN's Motion To Dismiss the Claims of Certain Plaintiffs Based Upon Forum Selection Clauses or, in the alternative, To Sever and Transfer Those Claims, at pg. 7 ("Opp. Br. on Forum Selection Clause").

Plaintiffs have not demonstrated that the forum selection clause is "unreasonable" under the standards set forth in *Roby.* Plaintiffs do not contend that they were fraudulently induced into agreeing to the forum selection clauses. This Court finds that the sales and lease agreements involved in this case constitute arm's length transactions between sophisticated business entities. Furthermore, Plaintiffs' allegation that the they lacked equal bargaining power is not sufficient to render the forum selection clause unreasonable. *See HNY Assocs., L.L.C. v. Summit Resort Prop., Inc.,* No. 01 Civ. 0428(HB), 2001 WL 456250, at *2 (S.D.N.Y. April 30, 2001).

Plaintiffs also argue the forum selection clause is unreasonable because the terms were not subject to negotiation. Opp. Br. on Forum Selection Clause, at pg. 8. However, a forum selection clause is not unreasonable

simply because it is contained in a form contract and is not subject to negotiation. *See Carnival Cruise Lines, Inc.*, 499 U.S. at 593, 111 S.Ct. at 1527 (enforcing a forum selection clause written on the backs of passenger tickets despite the passengers' objection that they had not been able to bargain over the tickets' conditions); *HNY Assocs.*, 2001 WL 456250, at *2 (stating that "[t]he law does not relieve a commercial entity of an obligation knowingly assumed simply because the complaining party lacked the bargaining leverage to avoid the unwanted contract term."); *Haskel v. FPR Registry, Inc.*, 862 F.Supp. 909, 916 (E.D.N.Y.1994) (finding that "mere absence of negotiation over the actual terms of the contract and the forum selection clause itself does not make a forum selection clause unenforceable.").

Next, Plaintiffs have not shown that they will be deprived of their day in court under the second *Roby* exception. Plaintiffs argue that litigating their claims in Illinois or Wisconsin would be inconvenient because most of the witnesses, documentary evidence, and emissions testing equipment are located in New York. Opp. Br. on Forum Selection Clause, at pg. 7. However, the inconvenience and expense of traveling are themselves not sufficient to require this Court to disturb the parties' contractual choice of forum. *See Bremen*, 407 U.S. at 17–18, 92 S.Ct. at 1917; *Bense*, 683 F.2d at 720 (holding that the inconvenience and expense of traveling are inadequate reasons for not enforcing a contractual forum selection clause); *HNY Assocs.*, 2001 WL 456250, at *2 (enforcing an agreement requiring the parties to litigate in California instead of New York); *Strategic Mktg. & Comm., Inc. v. Kmart Corp.*, 41 F.Supp.2d 268, 274 (S.D.N.Y.1998). There will likely be only a few witnesses in this case and most of the communication between the parties can be made by phone, fax or mail. Additionally, Plaintiffs have failed to explain why the presentation of testimony of any of the witnesses by deposition would be inadequate. *See Strategic Mktg. & Comm. Inc.*, 41 F.Supp.2d at 274.

Plaintiffs' argument that inconsistent adjudications may result from a transfer is misguided. This Court does not find it unjust or unreasonable that different parties could have different results in different courts. Lastly, Plaintiffs argue that the State of New York has a substantial interest in the outcome of this case and its potential impact on the emissions testing program. Opp. Br. on Forum Selection Clause, at pg. 7. However, this is not enough to disregard the forum selection clause in the parties' agreement. *See Elite Parfums, Ltd. v. Rivera*, 872 F.Supp. 1269, 1272 (S.D.N.Y.1995) (denying motion to transfer claim from New York to Texas even where Texas had a local interest in having the action resolved and where the negotiation, signing and alleged breach of contract occurred in Texas because these factors were insufficient to overcome the forum selection clause); *Haskel*, 862 F.Supp. at 917 (finding that New York's strong interest in having its corporate and labor laws enforced is not a sufficient basis for declining to honor Maryland as the contractual choice of forum).

Plaintiffs have not attempted to satisfy the third or fourth exceptions to the *Roby* "unreasonable" test by showing either that Illinois or Wisconsin law would be fundamentally unfair in resolving this dispute, or that the enforcement of forum selection clauses contravenes public policy in Illinois or Wisconsin. Accordingly, Plaintiffs have failed to satisfy the "heavy burden of proof" to show the "serious inconvenience of the contractual forum" warrants setting aside the forum selection clause. *Carnival Cruise Lines, Inc.*, 499 U.S. at 595, 111 S.Ct. at 1528; *Bremen*, 407 U.S. at 17, 92 S.Ct. at 1917. Thus, the Court is satisfied that the forum selection clauses in the agreements are reasonable and should be enforced.

**B. Dismissal or Transfer**

■ Since this Court has found the forum selection clauses enforceable, the next issue to be addressed is whether to dismiss or sever and transfer the claims of the Illinois and Wisconsin plaintiffs. Defendants move to dismiss the Illinois and Wisconsin Plaintiffs' claims for improper venue pursuant to Fed.R.Civ.P. 12(b)(3), or in the alternative, to sever and transfer the claims to the United States District Court for the Northern Dis-

trict of Illinois and the United States District Court for the Eastern District of Wisconsin, respectively, pursuant to 28 U.S.C. §§ 1404(a)[6] or 1406.[7] SUN Mem., at p. 11–12. Plaintiffs argue that the proper procedure for enforcing a valid forum selection clause is through a motion to transfer pursuant to 28 U.S.C. § 1404(a) rather than dismissal. Opp. Br. on Forum Selection Clause, at p. 9.

Because venue in the Eastern District is proper based on diversity of citizenship pursuant to 28 U.S.C. § 1332, this Court may either dismiss this case solely by its power to enforce a valid forum selection clause or may transfer this case under 28 U.S.C. § 1404(a). *See GMAC Comm. Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 409 (S.D.N.Y.2001). The forum selection clauses at issue do not specify in which court Plaintiffs' suit is to be brought. Rather, the forum selection clause for the Illinois plaintiffs merely requires that all claims be brought "in the courts of the state of Illinois." Plott Decl., Ex. A–F, at ¶ 15. The forum selection clause for Saturn requires that all claims brought "shall be determined by a court of competent jurisdiction in the state of Wisconsin." Plott Decl., Ex. G, at ¶ 13. These clauses leave plaintiffs with the choice of filing in either the state or Federal courts of the respective states. This Court finds that dismissal of the claims properly preserves Plaintiffs' decision regarding in which court to re-file.

Accordingly, SUN's motion to dismiss the claims of the Illinois Plaintiffs on the ground that choice of forum clauses in their respective contracts and/or leases require their claims against SUN to be litigated in Illinois is GRANTED and SUN's motion to dismiss Saturn's claims on the ground that choice of forum clause in its lease agreement requires its claims against SUN to be litigated in Wisconsin is GRANTED.

**6.** 28 U.S.C. § 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

## CONCLUSION

For the reasons set forth above, Defendants' motion for a more definite statement of the allegations is DENIED, motion to dismiss GNYADA as a party is GRANTED, motion to dismiss Plaintiffs' claims for negligence is GRANTED, motion to dismiss the claims of the Illinois Plaintiffs based on forum selection clauses is GRANTED, without prejudice, to refile in the courts of the state of Illinois, and motion to dismiss the Saturn's claims based on the forum selection clause is GRANTED, without prejudice, to refile in the courts of the state of Wisconsin. All other motions are DENIED.

SO ORDERED.

**7.** 28 U.S.C. § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to a district or division in which it could have been brought."